J-A17009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| ANTHONY DINICOLA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOROTA GRYCZEWSKI | : | |
| | : | |
| Appellant | : | No. 419 EDA 2023 |

Appeal from the Order Entered December 14, 2022
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2020-005029

BEFORE:  KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED AUGUST 22, 2023**

Dorota Gryczewski (Mother) and Anthony DiNicola (Father) are the parents of the minor child, L.D. (the Child), who is three-years-old.  On December 14, 2022, the Court of Common Pleas of Delaware County (trial court) entered findings of fact and conclusions of law in support of a final order that awarded Mother and Father joint legal custody and shared physical custody of the Child.  Mother now contends that the order must be vacated because the trial court's findings are against the weight of the evidence, and the trial court did not properly consider several mandatory custody factors.  Additionally, Mother seeks to have the case remanded so that the trial court

_____

[*] Retired Senior Judge assigned to the Superior Court.

can correct purported ambiguities in the subject order.  Finding no merit in Mother's claims, we affirm.

**I.**

Mother and Father have been engaged in a protracted custody dispute over the Child since August 7, 2020, when Father filed a complaint seeking primary physical custody and shared legal custody.[1]  The first day of the trial concerning the parents' respective custody rights was held on April 5, 2022.  Both parents testified on that date, but Mother was not cross-examined.  The trial was scheduled to continue at a later date, and the trial court issued an interim order, on May 12, 2022, directing that Mother and Father would have joint legal custody of the Child, with Mother receiving temporary primary physical custody and Father receiving temporary partial physical custody.

The second and final day of the custody trial was held on October 20, 2022, at the end of which the trial court entered a final custody order awarding Mother and Father shared legal custody of the Child.  The trial court also entered findings of fact and conclusions of law in accordance with the non-exhaustive list of factors enumerated in 23 Pa.C.S. § 5328 of the Child Custody Act (the Act).

Mother timely appealed and the trial court filed a 1925(a) opinion giving the reasons why its order should be upheld.  **See** Trial Court 1925(a) Opinion,

---

[1] The trial court has given a more detailed procedural history of this case in its 1925(a) opinion.  **See** Trial Court 1925(a) Opinion, 2/28/2023, at 1-5.

2/28/2023, at 6-11. In Mother's brief, she contends that the trial court's findings were contrary to the weight of the evidence as to several provisions of the Act – subsections (1), (3), (6), (9), (10), (11), (12) and (13) of 23 Pa.C.S. § 5328. Moreover, Mother argues that the order on review is deficient because its terms are ambiguous as to which parent has custody over the child "during the weekdays between daycare drop-off and daycare pickup." Mother's Brief, at 21.

## II.

"With any child custody case, the paramount concern is the best interests of the child." *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted). "This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *Id.* (citation omitted). The trial court may award different types of custody, including a change in legal custody, so long as they consider the factors enumerated in section 5328(a) of the Act:

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

"All of the[se] best interest factors . . . are required to be considered by the trial court when entering a custody order." **D.Q. v. K.K.**, 241 A.3d 1112, 1118 (Pa. Super. 2020) (citation and brackets omitted). The trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." **M.J.M.**, 63 A.3d at 339. The trial court's reasons for its decision must be delineated "on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). "In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **D.Q.**, 241 A.3d at 1118 (citation and quotation marks omitted). "A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d)." **Id.** (citation omitted).

On review of a trial court's determination in a custody case, we apply an abuse of discretion standard. **See C.A.J. v. D.S.M.**, 136 A.3d 504, 506 (Pa. Super. 2016). This Court cannot make independent factual determinations, and all findings of the trial court must be accepted as long as they are supported by the record evidence. **See id.** The same is true as to

the trial court's determinations regarding the credibility of witnesses and the weight of the evidence. *See id.* We may only reject a trial court's legal conclusion if it results from an error of law or "is unreasonable in light of its factual findings." *Id.*

In the present case, Mother asserts that the trial court's findings are not supported by the record evidence. She first argues generally that the overall weight of the evidence, as to subsections of (1), (3), (9), (10), (11) and (12) of 23 Pa.C.S. § 5328, favors her as the Child's primary custodian. *See* Mother's Brief, at 14-18. Mother emphasizes that she had performed her parental duties more diligently and effectively than Father, that Father often had the Child's grandparents perform parental duties on behalf of the Child, and that Father has attempted to freeze Mother out of parental decision-making. Mother insists that she has demonstrated herself to be more likely than Father to nurture the Child and provide a stable home. She also takes issue with Father's decision not to enroll the Child in daycare, citing it as an example of Father shirking his parental duties to the detriment of the Child.

In addition to highlighting the custody factors which she claims must necessarily favor her as the Child's primary custodian, Mother argues that the trial court abused its discretion in determining, in the absence of competent record evidence, that subsections (6) and (13) of 23 Pa.C.S. § 5328 favored Father. *See* Mother's Brief, at 18-21. Mother stresses that the Child should reside primarily with her so that the Child may have more contact with her

half-brother, who resides solely with Mother.  Mother also cites Father's conduct during the custody dispute as evidence that Father will not cooperate with Mother in carrying out their respective parental roles.

Contrary to Mother's claims, we find no abuse of discretion in the way the trial court considered the statutorily mandated custody factors.  *See* Trial Court 1925(a) Opinion, 2/28/2023, at 6-8.  In its opinion, the trial court found that the evidence did not favor either Mother or Father because they are similarly situated with respect to the factors enumerated in subsections (1), (3), (9), (10), (11) and (12).  *See id.*  The trial court cited record evidence when considering each of those factors.

It was undisputed that both parents reside in Delaware County, so the proximity of their residences did not favor one parent over the other.  Neither parent had been absent from the Child's life since her birth, and there was no evidence that the Child's physical safety would be threatened by a finding of primary custody for one parent over the other.  There was ample evidence that Father could provide a stable and loving home for the Child, and that Father would be able to provide for all of the Child's needs.  *See id.*

Although Mother and Father had been in conflict over how the Child should be raised, the trial court found that there was no evidence that the Child herself had suffered due to the breakdown in the relationship between Mother and Father.  In fact, the trial court noted that despite their conflict, Father had demonstrated an ability to cooperate with Mother in the raising of

the Child, as exemplified by Father's paternal relationship with the Child's older half-brother. *See id.*

As the trial court considered all the section 5328 factors and cited portions of the record in support of its ruling, the requirements of section 5323(d) were satisfied. *See M.J.M.*, 63 A.3d at 339. Thus, Mother has failed to establish that the trial court abused its discretion when granting Mother and Father joint legal custody and shared physical custody of the Child.

As for Mother's claim concerning an ambiguity in the subject order over weekday custody, we again find that no relief is due. Mother argues that Father's decision not to enroll the Child at a daycare facility creates a gap in the custody order which must be addressed on remand. However, as noted by the trial court, the custody order gives Father the option to provide daycare for the Child at the residence of the Child's grandparents. *See* Trial Court Opinion, 2/28/2023, at 9-10. The Act does not require the trial court to identify specific childcare providers in the order, and the circumstances at hand do not at all refute the trial court's finding that it was unnecessary to do so because Mother and Father are both "credible in their ability to determine the best childcare during their custody periods and to ensure the [C]hild's safety at all times." *Id.* at 10. Thus, the order on review must stand.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/22/2023</u>