J-A03017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TYLER PETER MORRIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CATHERINE SARAH GRUSZKA | : | No. 2190 EDA 2024 |
| MORRIS | : | |

Appeal from the Order Entered July 12, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-09570-CU

| | | |
|---|---|---|
| TYLER PETER MORRIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CATHERINE SARAH GRUSZKA | : | No. 2191 EDA 2024 |
| MORRIS | : | |

Appeal from the Order Entered July 12, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-09570-CU

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED MARCH 14, 2025**

Tyler Peter Morris ("Father") appeals from two orders sustaining the objections of Catherine Sarah Gruszka Morris ("Mother") to the recommendations of the parenting coordinator and amending the custody order. We affirm.

Father and Mother, now divorced, are the parents of three minor children. Father filed a complaint in custody, and the court entered a custody order on September 21, 2023 ("the Custody Order"), awarding the parents shared legal and physical custody.

Paragraph 5 of the Custody Order, regarding birthday parties, stated,

> The children's birthdays shall be shared with the parties and the children as a family. In the event this is not possible, the children's birthdays shall be divided. On school days, the custodial parent shall have custody of the child from 4:00 p.m. to 6:00 p.m. and the non-custodial parent shall have custody shall have custody of the child from 6:00 p.m. to 8:00 p.m. On non-school days, the custodial parent shall have custody of the children until 4:00 p.m. and the non-custodial parent shall have custody of the children from 4:00 p.m. to 8:00 p.m. Children's birthday parties shall be shared between the parties, with the parties alternating the right to plan the party and the obligation to pay every other year.

Custody Order at ¶ 5.

Paragraph 22, regarding the right of first refusal for overnight care, stated,

> If the custodial party is unavailable for one overnight or greater, the noncustodial parent shall have the Right of First Refusal before the Child is placed with a third party for care. However, the parties agree that both sets of Grandparents shall be permitted to have up to five (5) overnights with the children per year, in addition to the week set forth in Paragraph eight (8) above,[1] wherein the within Right of First Refusal clause does not apply. The parties must provide notice to the other if the children are staying overnight with the respective grandparents.

_____

[1] Paragraph eight allowed each set of grandparents one week to care for the children each summer, during the respective parties' regular custodial week. Custody Order at ¶ 8. Paragraph eight specifies that "The Right of First Refusal set forth in paragraph 22 below shall not apply during this week." ***Id.***

***Id.*** at ¶ 22.

Neither party appealed from the entry of the Custody Order. However, the parties disputed the interpretation and implementation of various provisions, including paragraphs 5 and 22. Upon Father's petition, the court appointed a parenting coordinator. ***See*** Pa.R.Civ.P. 1915.11-1 (eff. March 1, 2019 to March 31, 2025).

The parenting coordinator issued a recommendation on April 24, 2024, regarding paragraph 22. Relevant to this appeal, the parenting coordinator proposed that if Father allowed the paternal grandparents to care for the youngest child while Father traveled overnight with the two older children, without first offering Mother the option to care for the child, it would not count as one of the paternal grandparents' five allotted overnights to care for the children per year.

The parenting coordinator issued another recommendation on May 31, 2024, regarding paragraph 5. She recommended that Father be responsible for the children's birthday parties in 2024, finding Mother had planned them in 2023.

Mother filed timely objections to both recommendations. Following a hearing, the court entered two orders ("Order #1" and "Order #2").[2] Order

_____

[2] The court issued and filed both orders on July 11, 2024. However, the docket states that Rule 236 notice was sent to the partes on July 12, 2024. We have amended the caption to reflect that the orders were "entered" on July 12, 2024. ***See*** Pa.R.A.P. 108(b) ("The date of entry of an order in a matter subject *(Footnote Continued Next Page)*

- 3 -

#1 sustained Mother's objection to the April 24, 2024 recommendation, regarding paragraph 22 (the right of first refusal for overnight care). The order stated,

> Paragraph 22 of the Custody Order dated September 21, 2023 is hereby CLARIFIED as follows:
>
> > 22.(a) If the custodial parent is unavailable to provide care for, or will be located in a different location th[a]n, one or more of the children for one overnight or longer, the custodial parent shall provide the noncustodial parent with a Right of First Refusal before placing the child or children with any third party for care. Anyone other than Father and Mother are third parties for purposes of this paragraph.
> >
> > 22.(b) If one or more of the children have a sleepover at a friend's home or a relative's home while the custodial parent is available to the child(ren), this shall not be considered a right of first refusal issue subject to paragraph 22.(a) above. Such sleepovers shall only occur in the normal course of a custodial parent's physical custody of the child(ren) unless otherwise agreed by the parties in writing. Sleepovers at grandparents' home(s) are limited to five nights per year.

Order #1, 7/11/24, at ¶ 3.

Order #2 sustained Mother's objections to the May 31, 2024 recommendation, regarding paragraph 5 (birthday parties). It stated,

> The last sentence of paragraph 5 of the Custody Order dated September 21, 2023 is hereby CLARIFIED as follows:
>
> > 5. The parties shall alternate planning the children's birthday parties. Mother shall plan O.M.'s [] and R.M.'s [] birthday parties in 2024 and every even year thereafter. Father shall plan E.M.'s [] birthday party in 2024 and every even year thereafter. Mother shall plan E.M.'s birthday party

_____

to the Pennsylvania Rules of Civil Procedure shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)").

- 4 -

in 2025 and every odd year thereafter. Father shall plan O.M.'s and RM.'s birthday parties in 2025 and every odd year thereafter. The planner of each party shall pay the expenses for said party.

Order #2, 7/11/24, at ¶ 3.

Father filed a motion for reconsideration, on which the court took no action. Father timely appealed both orders.[3] In his first appeal, Father raises the following issues.

1. Did the trial court err or abuse its discretion when it included a substantive modification of the physical custody schedule set forth in the underlying Custody Order without a modification hearing and when the only pending pleadings were Objections to the Recommendation of the Parenting Coordinator dated April 24, 2024, filed by [Mother]?

2. Did the trial court err or abuse its discretion when it sustained the Objection to the Recommendation of the Parenting Coordinator dated April 24, 2024, filed by [Mother] as the Parenting Coordinator's decision was reasonable and within the scope of her authority?

Father's Br. #1 at 5 (answers below and suggested answers omitted). In his second appeal, Father's issues are as follows.

1. Did the trial court err or abuse its discretion when it included a substantive modification of the physical custody schedule set forth in the underlying Custody Order without a modification hearing and when the only pending Petitions were Objections to the Recommendation of the Parenting Coordinator dated May 31, 2024, filed by [Mother]?

2. Did the trial court err or abuse its discretion when it sustained the Objection to the Recommendation of the Parenting Coordinator dated May 31, 2024, filed by [Mother] as the Parenting Coordinator's decision was reasonable and within the scope of her authority?

_____

[3] We consolidated the appeals *sua sponte*.

Father's Br. #2 at 4 (answers below and suggested answers omitted).

**Order #1**

Father first argues Order #1 substantively modified the terms of the Custody Order. Father argues the Custody Order allowed each set of grandparents to care for the children for one week during the summertime, for five nights during the rest of the year, and for unlimited other nights so long as the custodial parent offered the non-custodial parent the right of first refusal. He contends that in contrast, Order #1 restricts the grandparents to five overnights per year with the children, which Father asserts is inclusive of their week of summertime visitation, and regardless of whether the custodial parent is unavailable and has offered the custodial parent the right of first refusal. Father argues the court violated 23 Pa.C.S.A. § 5338 by modifying custody without a pending petition to modify. He also claims the court violated his right to due process by failing to notify him in advance of the hearing – which was regarding Mother's objections to the recommendations – that the court might modify custody. Father points to **P.H.D. v. R.R.D.**, 56 A.3d 702 (Pa.Super. 2012), in which he claims this Court held the court erred in "clarifying" a custody order during a contempt proceeding.

Father next argues that the court erred in sustaining Mother's objections to the parenting coordinator's recommendation regarding paragraph 22 because the parenting coordinator had authority to resolve the parties' disputes over the implementation of the Custody Order, pursuant to Pa.R.Civ.P. 1915.11-1. Father argues that the parenting coordinator

reasonably determined that paragraph 22 was not implicated when "Father was available to care for [the youngest child] but had made separate plans for the child to have a special overnight with paternal grandparents, rather than staying in a hotel with a babysitter for the daytime hours [when] Father and the older children would be skiing." Father's Br. #1 at 17. Father argues the court only had authority to modify the Custody Order if it was in the children's best interests.

We employ the following standard of review.

> We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial [court] regarding credibility and the weight of the evidence. The trial [court]'s deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

***D.Q. v. K.K.***, 241 A.3d 1112, 1117 (Pa.Super. 2020) (citation omitted).

In its opinion, the trial court states that it did not exceed its authority in rejecting the parenting coordinator's recommendation because the recommendation is only an interim order pending any further disposition by the court, and the court is not obligated to accept the recommendation, even without objection by a party. ***See*** Trial Court Opinion, filed 10/2/2014, at 3-4 (citing 231 Pa.Code R. 1915.11-1(d), (f)(4), (f)(6) and 231 Pa.Code R. 1915.11-2). The court explains that it is the court's duty to specify the terms and conditions of a custody award in sufficient detail for it to be enforced. ***Id.*** at 5 (citing 23 Pa.C.S.A. § 5323(f)).

The court also states that it did not alter the custody award but merely added language to clarify that the non-custodial parent must be offered the right of first refusal when the custodial parent "*will be located in a different location th*[*a*]*n*" one or more of the children overnight. *Id.* at 4 (quoting Order #1). The court found this additional language necessary because, while the Custody Order initially stated the non-custodial parent must be offered the right of first refusal when the custodial parent is "unavailable," "Father previously [argued] that he could be 'available' even when 100 miles away from the children." *Id.* The court states it also added the language, "*Anyone other than Father and Mother are third parties for the purposes of this paragraph*," to define "an ambiguous term used in the original Order." *Id.* (quoting Order #1). The court states, "The additions inserted in this paragraph do not alter either parties' custodial rights, nor remove the responsibility of notice or the right to refuse[,] itself." *Id.* The court finds the order clarifies the parties' "respective rights and duties" but "does not make any substantive changes to those rights and duties," and states "[t]he standards for 3rd party visitation remain unchanged but described with more specificity." *Id.* at 4-5.

The Rules of Civil Procedure provide that a parenting coordinator "is authorized to recommend resolutions to the court" about "parenting issues about which the parties cannot agree," such as "child-care arrangements" and "temporary variation from the custodial schedule for a special event or

particular circumstance." Pa.R.Civ.P. 1915.11-1(d)(1)(ii), (d)(1)(v).[4] A parenting coordinator cannot recommend "a change in the court-ordered custody schedule that reduces or expands the child(ren)'s time with a party." *Id.* at 1915.11-1(d)(2)(iii).

Once the parenting coordinator has submitted a written recommendation, the parties have five days to object. *Id.* at 1915.11-1(f)(3). If a party timely objects, "the recommendation shall become an interim order of court pending further disposition by the court." *Id.* at 1915.11-1(f)(6). It neither party objects, the court may approve the recommendation in whole or in part, conduct a hearing, or remand the recommendation for the parenting coordinator to obtain or provide more specific information. *Id.* at 1915.11-1(f)(4).

Given this framework, we reject Father's argument that the parenting coordinator's authority to make recommendations to the court regarding parenting issues preempted the court's authority to accept or reject those recommendations. The court is not obligated to accept the recommendations.

We likewise find no merit in Father's argument that the court lacked authority to amend the Custody Order absent a filing captioned as a petition to modify. In *C.A.J. v. D.S.M.*, 136 A.3d 504 (Pa.Super. 2016), we acknowledged that "generally, the appropriate manner in which to request modification of a custody order is to file a petition for modification[.]" 136

_____

[4] Changes to the Rule take effect April 1, 2025.

A.3d at 507. However, we observed our prior pronouncement that "if notice of the proceeding adequately advises a party that custody will be at issue, a court *may* entertain the request to permanently modify a custody order after hearing in that proceeding." ***Id.*** (quoting ***S.W.D. v. S.A.R.***, 96 A.3d 396, 405-06 (Pa.Super. 2014) (emphasis in ***C.A.J.***). We held the court did not err in amending custody during contempt proceedings where the mother had notice that custody was at issue and she was present at the hearing. ***Id.*** at 509; ***cf. J.M. v. K.W.***, 164 A.3d 1260, 1270 (Pa.Super. 2017) (*en banc*) (finding court abused its discretion in transferring custody as contempt sanction where father's notice to mother that he sought to modify custody during contempt proceeding was deficient).

Here, Father was duly on notice that the parties could not resolve their conflicting interpretations of paragraph 22, and that the parenting coordinator would be making a recommendation to the court on how to resolve the issue. Father was aware of Mother's objections to the recommendation and was present at the ensuing hearing. The court's decision to alter the language in the Custody Order did not violate Father's right to due process.

Moreover, while the court altered the language of the Custody Order, the court did not "reduce or expand" either party's custody award. It thus did not "modify" custody or exceed the scope of issues that may be resolved through proceedings initiated using a parenting coordinator. Rather, the court resolved the ambiguities in the Custody Order by disentangling two provisions that paragraph 22 had previously lumped together: (a) the right of first

refusal, applicable when the custodial parent is not providing direct care for one or more of the children overnight and the children are placed with a third party and (b) the five voluntary sleepovers per year with grandparents that are excused from the right of first refusal. Separating these provisions into subsections did not substantively alter the provisions of the Custody Order. Nor did clarifying that a parent's being in a different location makes them "unavailable" to care for the children, or that the grandparents are third parties.

We also disagree with Father that the order now prevents the grandparents from providing overnight care for the children on more than five nights per year. The amending language plainly states that the "sleepovers" mentioned in subsection (b) of paragraph 22 are not subject to the right of first refusal mentioned in subsection (a), and subsection (a) does not limit the grandparents' ability to provide overnight care during a custodial parent's unavailability more than any other third party. Therefore, as in the initial Custody Order, the grandparents may care for the children at least five nights a year and on any other night where the custodial parent is in a different location from the children and the non-custodial parent has been offered the right of first refusal. Although amended paragraph 22 no longer refers to the week of summertime visitation provided by paragraph eight, Mother concedes that the five overnights allowed in paragraph 22 are separate and distinct from the summertime week provided for in paragraph eight. **_See_** Mother's Br. #1 at 7.

*P.H.D.* does not command a different result. In that case, the custody order initially directed the father "to have no contact with the children other than supervised visits." *P.H.D.*, 56 A.3d at 704. Following a hearing on the mother's contempt petition, the court "clarified" this provision by ordering the father "not to appear at places where the children would be reasonably expected to be." *Id.* We found,

> Under the trial court's new "clarification," [the f]ather is no longer permitted to attend school activities, community activities that [the c]hildren will likely attend, or even restaurants and stores that [the c]hildren might visit. This is a significant departure from the previous order that limited [the f]ather's time spent with [the c]hildren to supervised visits.

*Id.* at 707. Here, in contrast, the court did not limit the amount of time Father can spend with the Children.

### Order #2

As in his first appeal, Father argues Order #2 substantively modifies the terms of the Custody Order. He asserts that the Custody Order provided that one parent would plan all the birthday parties each year, on alternating years, but that Order #2 provides that one parent would plan two parties in any given year, and the other parent plan the third party, with the parents alternating years. As he argued in the appeal of Order #1, Father asserts the court's modification of the custody order without a modification petition violated 23 Pa.C.S.A. § 5338 and his right to due process.

Finally, Father argues the court erred in sustaining Mother's objection to the parenting coordinator's recommendation on this issue because

resolution of the issue fell within the parenting coordinator's authority. Father asserts the parenting coordinator's recommendation was reasonable, as she found that Mother had planned the birthday parties for all three children in 2023, and that having Father plan them in 2024 and the ensuing even years would fulfill paragraph 5 of the Custody Order. Father argues the court's rejection of the parenting coordinator's recommendation, and modification of paragraph 5 of the Custody Order, was not in the children's best interests.

The court again found that clarification was needed because the parties could not agree on how to interpret paragraph 5 of the Custody Order. The court observed that the Custody Order ambiguously instructed the parties to divide the responsibilities and alternate on a yearly basis. It noted the parties could not agree on how to implement this provision, as, "Father interpreted the order to allow one of the parties in alternating years to be responsible for planning all the children's birthday parties that year." Trial Ct. Op. at 5. "On the other hand, Mother interpreted the birthday provision to mean the parties would divide and share amongst themselves the planning for the children's birthdays." *Id.*[5] The court observed that between the time the dispute arose and the hearing, Mother had held a June 2024 birthday party. *Id.* at 6. The court found it necessary to add language to the Custody Order to reflect this

_____

[5] According to her brief, Mother interpreted the singular use of "party" in the last line of paragraph 5 of the Custody Order to mean the parents should alternate planning each birthday party, which would naturally result in the parents planning the opposite parties the subsequent year. *See* Mother's Br. #2 at 5.

fact and to assist the parties in dividing future birthday parties, as the original Custody Order had instructed. *Id.* The court explained that it did not modify custody, but clarified the rights and responsibilities outlined in the original Custody Order "by specifying the names of the children and designating which years each parent would be responsible for planning the children's birthday parties." *Id.* The court stated it "clarified which parent plans each party in even and odd years, giving specificity to the ambiguous provision without interfering with either party's rights." *Id.* at 7.

We find this appeal lacks merit for the same reasons as the first appeal. The court was not obligated to accept the parenting coordinator's recommendation. Father's due process rights were not violated because Father had due notice and an opportunity to be heard and because the order did not substantively modify the custody award. Nor do we find the court's resolution of the issue to be an abuse of discretion.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/14/2025